NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In re the Matter of:

JACQUELINE L. SOETAN, *Petitioner/Appellee*,

*v.*

RAPHAEL A. SOETAN, *Respondent/Appellant.*

No. 1 CA-CV 20-0068 FC
FILED 12-22-2020

Appeal from the Superior Court in Maricopa County
No. FC2009-003343
The Honorable Kevin B. Wein, Judge

**AFFIRMED**

COUNSEL

Simmons & Gottfried PLLC, Scottsdale
By Alona M. Gottfried
*Counsel for Petitioner/Appellee*

Wees Law Firm LLC, Phoenix
By James F. Wees
*Counsel for Respondent/Appellant*

---

**MEMORANDUM DECISION**

Judge Cynthia J. Bailey delivered the decision of the Court, in which Presiding Judge Randall M. Howe and Judge Kent E. Cattani joined.

---

**B A I L E Y**, Judge:

¶1        Raphael Soetan ("Father") appeals the trial court's orders denying him credit against his child support obligation and calculating his child support arrearage.  For the reasons that follow, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2        Father and Jacqueline Soetan ("Mother") were married for 18 years and had three minor children when Mother filed for divorce.  In October 2009, the court entered a default decree of dissolution that required Father to pay $1,024 per month in child support, $6,000 per month in spousal maintenance, and the mortgage, utilities, insurance and taxes on the marital residence for as long as he lived there.  Even though the decree, child support worksheet, and income withholding order all stated Father owed monthly child support of $1,024, the child support order set a payment amount of $0.  After the divorce, Father and Mother continued to live together in the marital home with the children, and Father paid Mother between $4,700 and $6,600 each month until he moved out in March 2015.

¶3        In August 2015, Mother petitioned the court to hold Father in contempt, arguing he had failed to pay spousal maintenance and child support dating back to October 2009.  After a two-day trial in January and February 2017, the trial court issued an order ("2017 Order") declining to hold Father in contempt.  As to spousal maintenance, the court found Mother was estopped from claiming arrearages because she had delayed bringing the claim and had accepted Father's monthly payments of less than the ordered amount without objection.  As to child support, the court acknowledged the discrepancy between the language of the decree and the child support order, but found the decree controlled and that Father knew the decree required him to pay the ordered amount.  The court found, however, that because Father's monthly payments to Mother between October 2009 and March 2015 "more than covered" his obligations to pay the mortgage and other expenses, the payments could "also be applied towards his monthly child support order of $1,024."  Therefore, Father

2

owed no child support arrearage "for the period in question."[1] The court did not issue a corrected child support order, and Father failed to pay any child support after March 2015.

¶4 In February 2019, Mother again petitioned to hold Father in contempt for failing to pay child support. Six months later, Father petitioned to modify legal decision-making and parenting time and sought a calculation of overpayment of child support. Father claimed that the 2017 Order eliminated his obligation to pay child support during the time he lived with the children and thereby entitled him to a credit toward future child support for the amounts he paid to Mother between October 2009 and March 2015. The trial court dismissed Father's overpayment claim, finding that the 2017 Order did not entitle him to a "credit" against future child support.

¶5 After a hearing, the court then found Father failed to pay child support from March 1, 2017, through December 18, 2019, and entered an arrearage judgment. Mother moved to amend the judgment, arguing that the ruling in the 2017 Order that Father owed no past-due child support applied only to the period before Father moved out of the marital home in March 2015. She asserted the 2017 Order did not conclude that Father had satisfied his child support obligations for the period between March 2015 and February 2017 and moreover, that Father admitted he had not paid child support since March 2015. After full briefing, the trial court granted Mother's motion and ruled the 2017 Order applied only to child support owed from October 2009 through March 2015. The amended judgment calculated Father's arrearage from April 1, 2015, determining that he owed $58,368, plus interest.

¶6 We have jurisdiction over Father's timely appeal pursuant to Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes §§ 12-120.21(A)(1) and -2101(A)(1).

**DISCUSSION**

¶7 Father argues the 2017 Order indicated that he had overpaid spousal maintenance for six years, and argues the court erred by failing to

---

[1] The court suggested that Father might have been able to change the obligation to pay child support while he was living with Mother and the children (presumably because he was paying all of the children's expenses), but the court noted that Father had not sought during that period to modify the specified child support obligation.

grant him a credit against his child support for those overpayments.[2] The premise of Father's argument, however, is unfounded. The trial court did not rule in the 2017 Order that Father had overpaid spousal maintenance. The court found that Father made monthly payments of between $4,700 and $6,600 while the parties lived together and concluded that Mother's acceptance of those payments without objection estopped her from claiming a spousal maintenance arrearage for the period at issue. The court did not, as Father asserts, set aside the spousal maintenance obligation or conclude that Father had overpaid his spousal obligations over that period.

¶8            Moreover, Father has waived any contention that he was not obligated to pay child support during the period that he lived with Mother and the children because he failed to make that argument when the trial court considered evidence of the payments he had made during that period. *See Odom v. Farmers Ins. Co. of Ariz.*, 216 Ariz. 530, 535, ¶ 18 (App. 2007) ("[A]rguments raised for the first time on appeal are untimely and deemed waived."). The trial court essentially found in 2017 that Father's payments to Mother during the time he lived with her and the children satisfied his child support obligation, but the court specifically noted that he had not sought a change in child support during this period.

¶9            Father also challenges the trial court's 2019 ruling that, under the 2017 Order, his child support obligations were current only through March 2015, when he moved out of the family residence. On appeal, he argues that the ruling violates *res judicata*. That principle does not apply here, however. The 2019 order from which Father appeals did not amend the earlier ruling. Instead, the 2019 order correctly interpreted the 2017 Order to hold that Father had satisfied his child support obligations only during the time he was living with Mother and the children.

¶10           Mother requests her reasonable attorneys' fees on appeal pursuant to A.R.S. §§ 12-349 and 25-324. After considering the financial resources of both parties and Father's positions on appeal, Mother's request for attorneys' fees is granted pursuant to § 25-324, contingent upon her compliance with Arizona Rule of Civil Appellate Procedure 21.

---

[2] To the extent Father is challenging his civil contempt finding, this court lacks jurisdiction. *See Stoddard v. Donahoe*, 224 Ariz. 152, 154, ¶ 7 (App. 2010) ("A special action petition is the appropriate method to challenge a civil contempt order because the finding of contempt and civil sanctions are not appealable.").

## CONCLUSION

**¶11** For the foregoing reasons, we affirm the orders finding Father owes child support arrears and amending the start date of his arrears to April 1, 2015.



AMY M. WOOD • Clerk of the Court
FILED: AA